## ROUNTREE *v.* WILLIAMS, administrator.

*Lumpkin, J.*—1. Construed in the light of the parol evidence admitted without objection to explain the meaning of the deed from the claimant to her son's wife, it passed the title to the son. By its terms, the land described therein was "granted, bargained and sold" to the daughter-in-law "for herself and for the use of" the son; but the *habendum* and warranty clauses restricted the beneficial use to the son alone, and it plainly appeared from the parol evidence referred to that the grantor's intention was to convey the entire title to him.

2. The land, therefore, became subject to a judgment against the son, in existence when the deed was executed; and this is so although the real consideration of the deed may have been a promise by the son to support the mother, which he failed to perform, and because of which failure the deed, upon proper pleadings, with proper parties, and with proof of his insolvency, might in equity, as between the parties thereto, have been set aside. *Judgment reversed.*

July 13, 1896. By two Justices.

Levy and claim. Before Judge Hansell. Brooks superior court. August 14, 1895.

In March, 1880, Rountree obtained judgment against B. W. Williams, and on November 3, 1885, the execution issued thereon was levied upon   certain land to which a claim was interposed by Mary A. Williams.   The case was submitted to the judge without a jury; and he held the property not subject.

It appears from the evidence for the claimant, that on November 4, 1884, she executed a deed conveying the land in question to Permelia F. Williams, the wife of B. W. Williams, "for herself and for the use of B. W. Williams and his heirs and the assigns of said P. F. Williams and B. W. Williams." The deed recites a consideration of $500 in hand paid.   The *habendum* clause is, to "P. F. Williams for the use of B. W. Williams or his heirs, executors, administrators and assigns, in fee simple."   The warranty is to "P. F. Williams for the use of B. W. Williams and his heirs, executors, administrators and assigns."

Claimant testified:   B. W. Williams never gave me any money or anything else of value as a consideration of said deed, nor was there any consideration from any one except that the said deed was made under the following circumstances:   I was at home, and had no one to be with me except him and his wife.   I got them to stay with me and take care of me the balance of my life, and told him if he would do so I would give him my land at my death and he was to live there and take care of me.   Not long after that he wanted me to deed him the land.   He and I went to Dr. Coon and got him to write a deed, and it was not long after I got home that he took a notion to leave and told Fannie, his wife, to give me back the deeds, which I at first refused to take, but he insisted and I consented to take them back and did take them back, and Fannie made me a deed back.   B. W. Williams went off to Jacksonville and worked there for several years and came back to this county, but never lived with nor supported me.   I cannot recollect what property I turned

over to B. W. Williams when he moved over to the Williams homestead.     I do not remember how long B. W. Williams remained on the place; I think about three or four years, though it may not have been more than two. He went to Jacksonville when he left there.   He left me about 100 bushels of corn and household and kitchen furniture, buggy, one horse and two mules, also about twenty or twenty-five head of cattle.   I think this property was on the place when he first came there, and belonged to me I reckon.   B. W. Williams was to stay on the place as long as I lived.   He was to take care of and support me.   He was to provide for me.   He took a notion to go to Jacksonville and left me, and did not provide any more for me.   I think I signed the original deed, of which a copy is hereinbefore given, but not for the consideration named therein. I understood said deed conveyed the property to B. W. Williams provided he did as he contracted, but after he backed out I thought it was all done away with.   I live with my son Berry M. Williams in this county, and am eighty-three years old.   There was nothing said about as to where my support should come from, to the best of my recollection.   There was nothing said about my having to live on the place.   The understanding was that I was to live there with him.   I claim all that land now because he went off.

Mrs. Simpson, who was formerly the wife of B. W. Williams, testified:   In 1884 and 1885 I lived on claimant's place with her.   She resided during 1885 upon the land in dispute.   She was living alone, and my husband and I went to live with her and take care of her and be with her, and she made me a deed as trustee.   My husband and I remained on the place about two years.   My husband left us, and she broke up housekeeping as we could not live alone. My understanding was that the consideration of the deed was, that B. W. Williams and I were to live with claimant on her dower place and take care of her during her life, and

he was to farm on the place deeded. No money passed from me, and I know of none passing from my husband to claimant. There was no performance of the consideration of the deed, as my husband left the premises. He went to Jacksonville, Florida. Claimant had her farm stocked and supplied when he moved from the premises. She kept one of the horses until she died. I do not remember now about the remainder. On November 17, 1885, I made her a deed in consideration of $10, conveying the premises in dispute. She and some of her children requested me to make the deed back to her. It was not made for any consideration of money or other thing of value. I made it because B. W. Williams failed in doing what he promised to do when she made him the deed. The deed from her to him was written by Dr. Coon; he was a physician and not a lawyer.

*Glenn & Rountree*, for plaintiff.
*J. G. McCall* and *W. B. Bennett*, contra.